## A10A1054. ABRAMS v. PUTNEY.
### (697 SE2d 269)

BLACKBURN, Judge.
Following a bench trial in a dispute over Gary Abrams's failure to pay his former attorney's (Martin Putney) fees, the trial court

---

entered a judgment against Abrams and in favor of Putney. Abrams appeals, contending that the trial court erred by awarding excessive fees to Putney and to Putney's counsel (who represented Putney in the fee dispute), and by excluding some of Abrams's testimony as hearsay. For the reasons set forth below, we affirm.

"On appeal from a bench trial, we construe the evidence in favor of the judgment and will not disturb fact findings of a trial court if there is any evidence to sustain them." (Punctuation omitted.) *Hardnett v. Ogundele.*[1] So viewed, the record shows that on September 19, 2007, Abrams retained Putney to represent him in a personal injury case, arising out of an automobile accident, and executed a representation agreement, confirming Putney's retention. Pursuant to the agreement, Abrams would pay Putney forty percent of any settlement or judgment in Abrams's favor. Abrams further agreed:

> In the event that I transfer this case to another attorney, fail to cooperate in the prosecution of the case, cause the case to be dismissed or represent myself in these regards, or that there are responsive claims against me that your firm defends me against[,] I agree to compensate your firm at $335.00 per hour for all time spent on the case. You shall be entitled to interest at 1.5% per month on all unpaid billing as well as all costs of collection and court, including reasonable attorney's fees billed at $335.00 per hour and $35.00 per hour for secretary's and $50.00 [per] hour for clerk's time should collection against me be instigated.

In addition to representing Abrams, Putney also assisted Abrams in obtaining medical treatment for the injuries that he suffered as a result of the accident and further assisted him by obtaining agreements from the treatment providers to accept medical liens in lieu of payment at the time of service.

Shortly after being retained, Putney filed a personal injury action on behalf of Abrams against the woman who rear-ended Abrams's vehicle, served her with various forms of discovery, and assisted Abrams's medical providers in preparing medical narratives chronicling Abrams's injuries. In addition, Putney made a formal settlement demand of $150,000 to the defendant's insurer and, in June 2009, attended a mediation of the case, which was unsuccessful. Following the failed mediation, on June 30, 2009, Putney wrote a letter to Abrams, in which he explained his reasons for believing that a settlement of $150,000 was reasonable and further explained that

---

[1] *Hardnett v. Ogundele*, 291 Ga. App. 241, 242 (661 SE2d 627) (2008).

the case was going to be continued, which would remove it from the August trial calendar.

Less than one week after Abrams had received the June 30 letter, Putney went out of town, and Abrams was unable to contact him for approximately three days. Despite the fact that there were no pending deadlines or hearing dates in Abrams's case in July 2009, at some point during the first week of July, Abrams decided to hire new counsel to represent him. However, Putney did not learn that Abrams had done so until July 10, 2009, when he was informed of this fact by the insurer of the defendant in the underlying personal injury action. Despite Putney's efforts to persuade Abrams to reconsider this decision, Abrams's new counsel filed an entry of appearance on July 14, 2009, and Putney was terminated as Abrams's counsel on July 29, 2009.

On September 15, 2009, Abrams and his new counsel settled his personal injury action for $150,000, which was the amount that Putney had originally demanded, and executed a general release in settlement of all claims. One day later, Putney filed a motion to enforce the terms of his representation agreement with Abrams and to enforce the medical providers' liens. Shortly thereafter, Putney successfully moved for the settlement funds from Abrams's personal injury action to be deposited into the registry of the court, pending the resolution of the fee dispute. On October 29, 2009, a bench trial was held on the matter, during which Putney testified regarding his handling of Abrams's personal injury action, the $63,214.48 in fees incurred while handling that matter, and the efforts he undertook in attempting to collect those fees. Putney also introduced evidence of his billing records and the representation agreement that was signed by Abrams. Additionally, he introduced expert testimony from an attorney with experience in handling personal injury cases that both his fees and those of counsel representing him in the fee dispute were reasonable.

After the bench trial's conclusion, the trial court issued an order in which it found in favor of Putney and awarded him $63,214.48 in attorney fees for his representation of Abrams in the underlying personal injury action. A month later, after Putney's counsel submitted additional evidence regarding his efforts in the fee dispute case, which the trial court had requested, the court awarded Putney's counsel $24,544.60 and awarded Putney $5,000 for his own efforts toward collecting his fees. This appeal followed.

1. Abrams contends that the trial court erred in awarding Putney $63,214.48 in fees for his handling of Abrams's personal injury action and another $5,000 for his partial handling of the subsequent fee dispute. Specifically, Abrams argues that these awards were excessive. We disagree.

"Generally an award of attorney fees is not available unless supported by statute or contract." (Punctuation omitted.) *Padilla v. Padilla*.[2] "[I]n order to recover attorney fees, both their actual cost and their reasonableness must be shown." *Doe v. HGI Realty*.[3] Here, it is undisputed that Abrams and Putney executed an agreement that provided that Putney would represent Abrams in his personal injury action and that Putney would be paid at the rate of $335 per hour for his time spent handling the case if Abrams terminated his services and transferred the case to another attorney. The same agreement also provided that Putney was entitled to attorney fees incurred in any attempt to collect fees owed by Abrams for Putney's work on Abrams's case. Furthermore, during the bench trial of this matter, Putney testified regarding his work on Abrams's personal injury case and the fee dispute with Abrams, presented itemized billing records describing his efforts in both matters, and offered expert testimony that his efforts and fees were reasonable. At the court's request, Putney also submitted billing records for fees incurred in the fee dispute since the conclusion of the trial, which the trial court significantly reduced. Thus, the evidence was more than sufficient to support the trial court's award of $63,214.48 to Putney for his work on Abrams's underlying personal injury case and the further award of $5,000 for Putney's partial handling of the subsequent fee dispute with Abrams. See *Johnson Real Estate Investments v. Aqua Indus.*;[4] *Doe*, supra, 254 Ga. App. at 184.

2. Abrams also contends that the trial court erred in awarding $24,544.60 to Putney's counsel for his work on the fee dispute, arguing specifically that Putney was precluded from retaining outside counsel to handle the dispute and that such award was $2,000 more than outside counsel actually requested. We disagree.

Abrams cites no applicable case authority to support his argument that Putney was precluded from hiring outside counsel. Indeed, it is not uncommon for attorneys to hire outside counsel to handle bill disputes with former clients. See *McLellan v. Chilivis, Cochran, Larkins & Bever, LLP*.[5] Furthermore, Putney's expert testified as to the reasonableness of Putney's counsel's fees. In addition, Putney's counsel submitted evidence after the bench trial, at the trial court's request, in support of his fees, including itemized billing records indicating $22,544.60 in fees incurred. Putney's

[2] *Padilla v. Padilla*, 282 Ga. 273, 274 (1) (646 SE2d 672) (2007).

[3] *Doe v. HGI Realty*, 254 Ga. App. 181, 184 (561 SE2d 450) (2002).

[4] *Johnson Real Estate Investments v. Aqua Indus.*, 282 Ga. App. 638, 643 (4) (639 SE2d 589) (2006).

[5] *McLellan v. Chilivis, Cochran, Larkins & Bever, LLP*, 302 Ga. App. 562 (692 SE2d 26) (2010).

counsel also submitted evidence of fees that had been incurred since the conclusion of the trial, which totaled $13,915.89. The trial court ultimately awarded only $2,000 to Putney's counsel for his fees incurred after the trial. Thus, the trial court did not err in awarding $24,544.60 to Putney's counsel for his work on the fee dispute. See *Johnson Real Estate Investments*, supra, 282 Ga. App. at 643 (4); *Doe*, supra, 254 Ga. App. at 184.

3. Abrams contends that the trial court erred in excluding as hearsay his testimony regarding statements allegedly made by Putney's mother during a telephone conversation with Abrams. We disagree.

"The admission of evidence is within the trial court's sound discretion, which will not be disturbed on appeal absent abuse." *Kringle v. Elliott*.[6] During the bench trial, Abrams and his counsel attempted to discuss a telephone conversation that Abrams had with Putney's mother, in which she allegedly told Abrams that her son would no longer be representing him. The trial court responded that anything Putney's mother said constituted hearsay given the fact that she had not been called to testify at trial. However, the court added that it was not excluding the evidence but rather would accord it less weight than direct evidence. Indeed, Abrams was later allowed to testify, without objection, that Putney's mother told him that he "needed new counsel." Given that it is the function of the trier of fact to weigh the evidence, we find that the trial court's comments were not reversible error. See *Bowen Builders Group v. Reed*.[7]

Nevertheless, Abrams argues that the trial court should have given greater consideration to Putney's mother's statement because it constituted a prior consistent statement and was thus an exception to the hearsay rule. This argument is completely lacking in merit. The prior consistent statement rule provides that "where the veracity of a witness' testimony has been placed in issue, his or her prior consistent statements are admissible to rebut the inference of recent fabrication, improper influence or motive." *Hall v. Vargas*.[8] Here, Putney's mother never testified at trial; therefore, the prior consistent statement rule is inapplicable.

*Judgment affirmed. Barnes, P. J., and Bernes, J., concur.*

DECIDED JUNE 25, 2010.

*William A. Wehunt*, for appellant.

---

[6] *Kringle v. Elliott*, 301 Ga. App. 1, 2 (1) (686 SE2d 665) (2009).

[7] *Bowen Builders Group v. Reed*, 252 Ga. App. 54, 56 (555 SE2d 745) (2001).

[8] *Hall v. Vargas*, 278 Ga. 868, 871 (2) (608 SE2d 200) (2005).